ARMSTRONG, (WINTER'S BANK v.) See Case No. 17,899.

---

# Case No. 550.

## ARMSWORTHY v. MISSOURI RIVER, FT. S. & G. R. CO.

[5 Dill. 491.][1]

Circuit Court, D. Kansas. 1879.

CONSTRUCTION OF THE RIGHTS OF SETTLERS UNDER THE TREATY RELATING TO THE CEDED NEUTRAL LANDS IN KANSAS.

The case of Stroud v. Missouri River, Ft. S. & G. R. Co., [Case No. 13,547,] followed; and it was held in this case that, under the provisions of the treaty referred to, the actual settler whose improvements were wholly upon the west half of a quarter section of land was only entitled to buy the portion of the quarter section on which the improvements had been made.

Suit by complainant [W. W. Armsworthy] to acquire the legal title to the southeast quarter of section four, township twenty-eight, range twenty-five, in Crawford county. The facts appear in the opinion of the court.

Hill & Sallee, for plaintiff.

Wallace Pratt and Blair & Ferry, for defendant.

Before DILLON, Circuit Judge, and FOSTER, District Judge.

FOSTER, District Judge. The material facts in this case are precisely like those in the case of Stroud v. Missouri River, Ft. S. & G. R. Co., [Case No. 13,547,] excepting that the improvements in this case are all on the west half of the quarter section, and the complainant makes claim for the whole quarter, as in the Stroud Case. In that case the improvements being on every sub-division of the quarter, the question which arises in this case was not passed upon.

In the first proviso of article 17 of the treaty, [14 Stat. 804,] the rights of the actual settler who has made improvements of the value of fifty dollars and occupies the land for agricultural purposes at the date of the signing of the treaty are clearly defined. In making his proofs, he was entitled to buy at the appraised value the smallest quantity of land in legal sub-divisions which would include his improvements—not exceeding, however, in the aggregate, one hundred and sixty acres. Under the second proviso, as it was originally drafted, the secretary of the interior might sell all these neutral lands in a body, for not less than $800,000 cash. This proviso was general and sweeping in its terms, and did not save the rights of the settlers in the event of such a sale. When the treaty came before the senate for ratification, July 27th, 1866, this last proviso was stricken out, and the following inserted

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

in lieu thereof: "Provided, that nothing in this article shall prevent the secretary of the interior from selling the whole of said land not occupied by actual settlers at the date of the ratification of this treaty, not exceeding one hundred and sixty acres to each person entitled to pre-emption under the pre-emption laws of the United States, in a body, to any responsible party, for cash, for a sum not less than one dollar per acre." This amendment to the treaty was evidently intended to protect the actual settlers on these lands in the event they were sold in a body. But it imposes a further limitation to the first proviso of the article—that is, the settler must have been entitled to pre-emption under the pre-emption laws of the United States in order to be entitled to a preference in the purchase of the land; and it extended the time from the signing to the date of the ratification of the treaty.

1. Was it intended by this amendment to do more than impose this personal qualification and extend the time, leaving the value and kind of the improvements and the quantity of land to be determined by the first proviso?

2. Or was it intended to go further, and confer all the rights of the pre-emption laws as to improvements and quantity of land, etc., on the settler?

3. Or was it intended, as claimed by the plaintiff, that to the personal limitation was also given the right of the pre-emption laws as to the quantity of land, leaving the kind and value of the improvements to be determined by the first proviso?

If the second theory is the correct one, then the rights of the settler are to be determined by the provisions of the pre-emption laws of the United States, not only as to the person, but also as to the kind of improvements and the quantity of land to which he is entitled, and the provisions of the first proviso are immaterial. Certain rights were given the settler if the land was sold in parcels, and entirely different rights given, and restrictions imposed, if the land was sold en masse. So it would result, from such a construction, that any individual settler might or might not be entitled to his improvements, depending upon which way the secretary of the interior should happen to sell these lands. It does not seem reasonable that it was the purpose of this amendment to go to that extent. We can see no reason why such a wide distinction should be made, or why the court should construe the law as making such difference. Now, if it was not intended to remit the settler to the pre-emption laws for his rights in toto, was it intended to do so in part—i. e., as to the quantity of land to which he was entitled, but not as to the improvements? This is what the plaintiff contends for, but we cannot find a reason for such a construction of the act, unless it be to compensate for the personal restriction imposed.

No one would contend that it is in the

power of courts, in construing statutes, to apportion advantages to compensate for disadvantages. That is a legislative power, and we can only declare what the law is, not what it ought to be.

Holding, as we do, that these provisos are in pari materia, as intimated in the Stroud Case, and construing them together, there is still an unmistakable difference as to the rights of the settler in the two cases. In the one case the settler need not be entitled to pre-emption rights under the laws of the United States; in the other case he must be —that is, he must have the personal qualifications of a pre-emptor—such as citizenship, being the head of a family, or widow, or a single person twenty-one years of age, and not owning three hundred and twenty acres of land elsewhere, nor have abandoned his residence on his own land in the state to reside on these lands. Such restrictions might well have been deemed proper to cut off adventurers and speculators, who might go on to these lands without a bona fide intention of remaining and making a home. Further than this, and the extension of the time of settlement, we cannot think this amendment qualified the first proviso. It may be argued that such construction imposes a restriction on the settler in the one case without giving any compensating benefits therefor. But if that were true, the hardship of the case would not alone be a controlling consideration. But is it true? It extends the time named in the first proviso from the date of signing the treaty to the date of its ratification; and as to the original proviso for which this was substituted, it seems to have been intended by its terms to cut off the rights of the settlers altogether in case the lands were sold en masse.

The secretary of the interior was authorized to sell the whole of these lands in a body. There were eight hundred thousand acres of these ceded neutral lands, and it provided for selling them as a whole for $800,000 in gross, which would be one dollar per acre, making no deduction for the lands of settlers. If it was the intention to reserve those lands, it is altogether probable the price to be paid for the body of these lands would have been governed to some extent by the amount of lands remaining after deducting the improved lands. The amendment saved the rights of the settlers, and further provided for a sale as a whole of the remainder of the lands for one dollar per acre.

It is hardly probable that this proviso, which was substituted for one saving nothing to the settlers, was intended to enlarge the rights given by the first proviso of this article, or to fix a different rule as to improvements or the quantity of land reserved to the settler. Under our view of the law, the complainant was entitled to buy only the west half of said quarter section at the appraised value. Decree accordingly.